AUSA: Frank Balsamello

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

SHAWN ALLISON,

Defendant.

# 26 MAG 1741

## SEALED COMPLAINT

Violation of 18 U.S.C. §§ 2261A(2) and 2261(b)(3)

COUNTY OF OFFENSE: BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

HASEEB RANA, being duly sworn, deposes and says that he is a Special Agent with the Violent Gang Task Force of the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Stalking and Use of a Dangerous Weapon)

1.      From at least in or about April 2025 through at least in or about September 2025, in the Southern District of New York and elsewhere, SHAWN ALLISON, the defendant, with the intent to kill, injure, harass, intimidate, and place under surveillance with intent to kill, injure, harass, and intimidate another person, used the mail, an interactive computer service and electronic communication service and electronic communication system of interstate commerce, and another facility of interstate and foreign commerce to engage in a course of conduct that placed that person in reasonable fear of the death of and serious bodily injury to that person and caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person, and ALLISON used a dangerous weapon during the offense, to wit, ALLISON monitored an electronic tracking device surreptitiously placed on the car of a woman (the "Victim") to locate, follow, and ultimately assault the Victim using an ax.

(Title 18, United States Code, Sections 2261A(2) and 2261(b)(3).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.      I am an HSI Special Agent, and I have been personally involved in the investigation of this matter.  This affidavit is based on my examination of reports, records, and electronic evidence, as well as my conversations with other law enforcement officers and witnesses, including as set forth below. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

<u>The May 18, 2025 Attack</u>

3.    Based on my review of records from the New York City Police Department ("NYPD"), and my conversations with other law enforcement officers and witnesses, I have learned, among other things, that on or about May 18, 2025, the NYPD officers responded to reports of an assault (the "May 18 Attack"), in the vicinity of the Throgs Neck Expressway in the Bronx, New York, where a man—identified as SHAWN ALLISON, the defendant, as set forth below—used an ax to attack another motorist (the "Victim") who was driving a red SUV (the "Victim's Vehicle"). Later, the Victim received medical care for a laceration to the forehead consistent with her being struck with a hard object, which required multiple stitches to close. Responding officers also came to learn that the attacker had taken the Victim's cellphone during the incident.

<u>ALLISON's Relationship with the Victim</u>

4.    Through my investigation of this matter, including through my review of electronic evidence, I have identified SHAWN ALLISON, the defendant, as a former romantic partner of the Victim.[1]

a.    For example, other agents and I executed a search warrant—signed on or about November 25, 2025 by U.S. Magistrate Judge Valerie Figueredo—for two cellphones seized from ALLISON on or about October 2, 2025, *see infra* ¶ 11, one of which was a Samsung ("ALLISON's Samsung"). During that review, I observed a video from in or about June 2024, which shows ALLISON kissing and touching the Victim—who I recognize from viewing other pictures of her, as well as other information obtained in my investigation—as they stood with their arms around one another in a romantic posture (screenshots below, redacting the Victim's face).

 

---

[1] In addition to the evidence discussed herein, I am aware that ALLISON, through his attorney, described the Victim as his "former girlfriend" in a sentencing letter filed publicly in the Southern District of New York in case 25 Cr. 511 (ALC).

b.      ALLISON's Samsung also contains evidence that around the time of the May 18 Attack, he regularly drove a white Ford van (the "Van"), which was registered to the Victim, further confirming their personal relationship. Specifically, several photographs and videos on ALLISON's Samsung capture a white Ford Econoline van in positions suggesting that ALLISON was the user of the vehicle, including one video that appears to have been filmed by the person in the driver's seat as he drove down a residential street in or around Mount Vernon, New York. ALLISON's Samsung also contained a picture of a vehicle registration for a white 2008 Ford EC2-model van (which I believe, based on research, to be the Ford Econoline model), dated August 29, 2022 and in the name of an individual other than ALLISON. The VIN on that vehicle, ending in -02810, matches a white 2008 Ford van that was, by May 17, 2025, registered in the name of the Victim, indicating that the Victim acquired the Van sometime between 2022 and 2025 and allowed ALLISON to use it. His apparent use of the Van on the date of the May 18 Attack is discussed below, *see infra* ¶¶ 7-8.

<u>Identification of ALLISON as the Perpetrator of the May 18 Attack</u>

5.      Records of 911 calls indicate, in substance and part, that at least two callers reported the attacker was a black male who had been driving a white van. One caller said, in substance and part, that the attacker had a medium build, blue shirt, and white shorts; and the other said, in substance and part, that the attacker was about 45 years old, six feet tall, with a slim build.[2] I have also reviewed a video filmed by a passing motorist who attempted to record the attack by holding up his phone to the rearview mirror of his car after he had passed the incident. The screenshot below generally corroborates the appearance of the attacker as an average build black male wearing a blue-green shirt and white shorts.



_____

[2] This caller also believed the attacker to be wearing a white shirt. One of the callers also said that the object being used to attack the Victim's Vehicle was a sledgehammer; however, numerous communications between the Victim and ALLISON in the weeks following the attack establish that it was in fact an ax. *See infra* ¶ 9.

6.  The 911 caller descriptions and passerby's video set forth in the preceding paragraph are generally consistent with the appearance and build of SHAWN ALLISON, the defendant, as documented in the NYPD's arrest database, which indicates that ALLISON was 47 years old at the time of the attack, and at the time of a law enforcement encounter in or about 2009, he stood 5-feet, 11-inches tall and weighed approximately 170 pounds. A picture of ALLISON from ALLISON's Samsung dated approximately June 1, 2025, as well as my own direct interactions with ALLISON as recently as October 2025, further confirmed that this was still ALLISON's approximate size and appearance around the time of the May 18 Attack.



7.  A second 911 caller also recorded the scene of the May 18 Attack, and the footage shows an individual generally matching the appearance of SHAWN ALLISON, the defendant, getting into a white Ford van while the Victim appears to be checking her injuries and is then tended to on the side of the road by another bystander. Several windows of the Victim's Vehicle are visibly smashed in these videos, as well.

 

8.      I have also identified evidence linking the white Ford Van that was registered to the Victim as of 2025 to SHAWN ALLISON, the defendant, and to the May 18 Attack. Specifically, I have reviewed video footage from a License Plate Reader ("LPR") camera showing the Van, including several distinct physical characteristics circled below—*i.e.*, a rectangular green blemish between the rear windows, a silver plate to the bottom left with a piece of apparent rubber protruding from the bottom left corner of the door, specific mudflaps behind the wheels, and a large gold shield-shaped item to the right of the license plate. Also below are screenshots from a video found on ALLISON's Samsung, which shows a white van that appears to be identical to the Van (though the license plate and registration changed at some point). And finally, further below are images of the van from the 911 caller's video of the May 18 Attack, which confirms that the van driven by the attacker is consistent with the Van, as it appears in both the LPR footage and ALLISON's Samsung.

**LPR Footage of the Van**



**ALLISON's Samsung Video of the Van**



5

**911 Caller Video of May 18 Attack and the Van**

 

9. Other agents and I executed a search warrant—signed on or about January 12, 2026 by U.S. Magistrate Judge Stewart D. Aaron—for an iCloud account known to be used by SHAWN ALLISON, the defendant, based on, among other things, the registered name on the account being "Shawn Allison" ("ALLISON's iCloud"). Our review of the messages in ALLISON's iCloud revealed a lengthy exchange between him and the Victim in which they discuss, among other things, how ALLISON (i) put tracking devices on the Victim's Vehicle, (ii) attacked the Victim with an ax on May 18, 2025, and (iii) threatened to continue pursuing her and physically harming another man with whom she had a relationship.

a. For example, on or about May 16, 2025, the Victim sent a series of messages to ALLISON that said, "You fucked yourself when you place a device in my car and listened to my conversation especially with my mother in my car | N[***]a twice you did that shit you overstepped your fucking bounds when you put that in my car | In my fucking car???????" ALLISON responded, "I do not care | . . . | Do not care about their profession | I do not care what ur family says about me." Later in the exchange, ALLISON said, "No more tracking."

b. The following day, the Victim sent a message to ALLISON that said, "A n[***]a living with a bitch and placing recordings under my bed and tracker in my car??," and the following morning (May 18, 2025), at approximately 11:00 a.m., ALLISON responded, "I'll pay ur phone bill for the rest of the year | Relax | I'll give you $300 a month | Am selling u $500 tomorrow."

c. On or about May 19, 2025, the Victim sent a message to ALLISON that said, "I AM AFRAID OF YOU | JEUSS CHRIST | I'M AM AFRAID OF YOU | I DONT EVEN ALLOW YOU TO TOUCH ME," to which ALLISON replied, "Bc u want to go fuck other man." The Victim responded, "PLEASE LEAVE MY LIFE ALONE | SHAWN I BEEN NOT WANT YOU TO TOUCH ME FROM YOU BITE MY FACE." ALLISON answered, "**I fucking told u if we didn't work it work what's going to happen**" (emphasis added).

d. After several other messages, the Victim noted her injuries from the day before and pointed out that ALLISON had not done the same to another woman with whom he had a prior relationship: "SHAWN WHY YOU NEVER GIVE [WOMAN's NAME] 10 stitches

in her face when she was fucking n[***]as in your house." ALLISON responded, "I never love her." The Victim then said, "Why but is my fucking life you want to take with an axe," followed by the emoji:



      e.     ALLISON did not deny or even question why the Victim was saying that he tried to kill her with an ax, and he instead reverted to discussing his former partner stating: "**She know am a killer that's why she running**" (emphasis added). The Victim replied, "And she been told me to run from you | . . . | I tried running from you a long time now since 2 fucking years."

      f.     About ten minutes later, ALLISON pivoted to the Victim's cellphone, acknowledging that he had it in his possession and was making it available for her to get back: "Ur phone is in ur mother mailbox , ask [name] to pick it up."

      g.     ALLISON then turned to threatening the Victim, telling her that she would have to leave her job if he learned that law enforcement was looking for him: "If I find out the cops looking for me be prepared to quit ur job at [abbreviation for a workplace] | Get ready to be embarrassed all over that [type of workplace]."[3] The Victim implored ALLISON, "Shawn leave me alone," but he went on: "Starting with ur bby father and his friends."

      h.     The Victim returned to describing the May 18 Attack and ALLISON's role in it: "You caused ,3 accident | Broad day light your sick those people's car that crashed and where you crashed it they will watch those highway videos." ALLISON responded, "I never crashed into anyone." The Victim countered, "You are sick | Yes the fuck you did you caused 3 accidents. Those people waiting until the cops came while I went on my merry way to the hospital." Again, ALLISON did not deny or question what the Victim was talking about and instead commented on the other motorists who had been impacted by his conduct: "They can't drive."

      i.     Later that day, ALLISON sent a series of messages to the Victim, blaming her for what happened: "URGED U FOR US TO WORK IT OUT. U CHOOSE MAN THAT NEVER DO NOTHING FOR U | I BREAK MY BACK FOR U | ON A FUCKNG SUNDAY AM BUYING MATERIALS ON GUNHILL HOME DEPOT TO WORK ON UR FUCKING HOUSE THINKING U HOME . . ., THERE U GO ALL DRESSED UP WITH MAKEUP ON UR WAY TO A FUCKING N[***]A HOUSE | U CHOOSE DICK OVER UR HOUSE." The Victim responded by again referencing his attacking her with an ax: "Take axe [ax emoji] and chop a woman face ,??? And still believe I would ever miss [y]ou."

      j.     ALLISON again accepted the Victim's characterization of him "tak[ing an] axe and chop[ping] a woman['s] face," and continued on berating the Victim and threatening another man with whom ALLISON believed she was now romantically involved: "Asking numerous times let's go out refuse and a run every time this n[***]a call u | Make sure Mr look

---

[3] From context, and my experience and investigation, I believe recognize the abbreviation and workplace type to refer to a specific location where it appears the Victim was employed.

good help u in every way | He willneverrrrrrrrr come to that house." After a few more messages exchanged, ALLISON suggested, "Tell him to come over if him badd," clearly referring to the other man the Victim was seeing. The Victim responded, "Come over where," and ALLISON added explicit threats to shoot the other man: "**Police will get there when it's too late | . . . | Only need 10 seconds to unload**" (emphasis added). The Victim responded with several more messages that again explicitly accused ALLISON of committing the May 18 Attack, including: "you mash up my vehicle and bus[t] my face with [ax emoji]," "one day you be sorry the day you chopped my face out with an axe," and "I knew you too well and I tried so hard to get away from you."

k.      ALLISON did not deny or question any of what the Victim was talking about. Instead, about an hour and a half later, he expressed remorse, explicitly acknowledging the harm he had caused: "I KNOW ITS SUPER LATE FOR THIS BUT I APOLOGIZE FOR MY ACTIONS AND CANNOT SEEM TO IMAGINE WHAT MAKES ME GO TO SUCH EXTREME IN CAUSING ALL THIS DAMAGE, WE WAS INSEPARABLE AT ONE POINT AND I LOVE U DEARLY AND CANNOT FETHER ME TO ACT THIS WAY."

l.      About ten days later, on or about May 29, 2025, ALLISON and the Victim exchange additional messages, including several in which the Victim referenced ALLISON's past abuse, and ALLISON apologized without denying any of the conduct. For example, after the Victim said, "This is the second time you fucked with my vehicle knowing I have a kid," ALLISON replied, "I WILL FIX UR TRUCK AND PAY FOR A DOWNPAYMENT ON UR BENZ | NO TRACKING | I WILL KEEP STAYING AWAY | ONLY COME BY TO WORK AND LEAVE | I WONT EVEN PARK IN THE DRIVEWAY | I WILL NOT EVEN COME UPSTAIRS IF U DO NOT WANT ME TO | **LAST THING I WANT TO WAKE UP TO IS U OPENING THE DOOR FOR POLICE AT 6am**" (emphasis added).

10.    Significant additional evidence corroborates the apparent narrative in the messages exchanged between SHAWN ALLISON, the defendant, and the Victim.

a.      For example, ALLISON's Samsung contained dozens of screenshots of maps that showed the location and/or location history of tracking devices that ALLISON evidently placed on the Victim's Vehicle to follow her location. The screenshots were dated between April and September 2025, and the tracking devices were identified in ALLISON's Samsung by a shortened four-letter abbreviation of the Victim's first name (or the same abbreviation followed by the word "NEW," suggesting that multiple devices had been used over time). A heavily blurred and redacted example is copied below showing the map location and address of a tracker, accompanied by an apparent nickname of the Victim.[4]

---

[4] Based on my training, experience, and my investigation of this case, I believe that the circumstances of the May 18 Attack on the Victim—including that the attacker had been able to find the Victim while she was driving on a heavily traveled Bronx highway—are consistent with a stalking scenario in which a perpetrator uses an electronic device or other surveillance method(s) to monitor the real-time location of the victim.



b.      On or about February 3, 2026, other agents and I used an application on ALLISON's Samsung called "SmartThings" to elicit a ringing sound from an electronic tracking device hidden on the underside of the Victim's Vehicle. Photographs of the device secreted under the Victim's Vehicle and following its removal are below.






c.    Also on ALLISON's Samsung was a photograph dated June 21, 2025 of a man's hand holding the head of an ax broken off of the handle, corroborating that he possessed such a tool and that it had broken, perhaps from striking a large and heavy object like the Victim's Vehicle.



## ALLISON's October 2025 Arrest and Admission

11.    Finally, on or about October 2, 2025, I participated in an arrest of SHAWN ALLISON, the defendant, on a charge of illegally reentering the United States following a prior deportation, in violation of 8 U.S.C. § 1326—a charge to which ALLISON subsequently pled guilty and was sentenced in case 25 Cr. 511 (ALC). The following day, while in the federal courthouse awaiting his arraignment, I heard ALLISON make several voluntary statements that were not prompted by interrogation. The statements included the following, in substance and part:

a.    ALLISON said that he preferred having control over the woman with whom he was in a relationship and that he preferred to maintain such control when the relationships ended by not allowing the woman to date other men.

b.    ALLISON further stated that he had placed tracking devices on romantic partners' vehicles to track their movements, and he would switch the devices out at least once each year to replace the battery. When women discovered that trackers were on their cars, he would remove them in their presence but then replace them with new ones when the women were not aware.

c.    ALLISON explained that he used applications on his cellular devices that connected to the trackers and transmitted the trackers' locations to ALLISON.

10

WHEREFORE, I respectfully request that a warrant be issued for the arrest of SHAWN ALLISON, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

Haseeb Rana (by VF with permission)

HASEEB RANA, Special Agent
Homeland Security Investigations

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this __7__ day of May, 2026.

THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York

11